ESTATE OF Charles WATTS, and
Estate of Verna Watts, Plaintiffs
Below, Appellants,

v.

BLUE HEN INSULATION, Defendant
Below, Appellee.

No. 430, 2005.

Supreme Court of Delaware.

Submitted: April 25, 2006.
Decided: July 6, 2006.

Thomas C. Crumplar, Esquire (argued) and Elizabeth Barnes Lewis, Esquire, of Jacobs & Crumplar, P.A., Wilmington, Delaware, for Appellants.

Scott A. Simpson, Esquire, of Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice.

In this appeal, we consider whether certain workers' compensation benefits abate, either because of the death of the injured worker or the death of his surviving spouse. The worker suffered, and eventually died, from an occupational disease. The Industrial Accident Board held that his estate's posthumous claim for permanent injury benefits was extinguished when the worker's wife also died. The Board also decided that the death benefits being paid to the worker's wife terminated upon her death. The Superior Court agreed with the Board's legal analysis. We conclude that the relevant statutes, read in light of the purpose of the worker's compensation laws, authorize the award of permanent injury benefits to a claimant's estate, and that a spouse is entitled to 400 weeks of death benefits, even if the spouse does not survive that long.

### Factual and Procedural Background

Charles Watts, who worked as an insulator for more than 30 years, developed asbestos-related lung cancer from which he died on May 12, 2002. A few months before his death, Watts filed a Petition for Compensation for his occupational disease.[1] The Board decided, on April 2, 2003, that Watts suffered a compensable occupational disease and that he suffered his last injurious exposure to asbestos while working for Blue Hen Insulation in 1986. The Board awarded medical expenses and burial expenses to Watts's estate, and death benefits to Verna Watts, his surviving spouse.

Approximately one year later, Watts's estate filed a petition for permanent injury benefits, claiming permanent injury to Watts's lung, heart and adrenal glands. Before the scheduled hearing date, Verna died and Blue Hen stopped paying the previously ordered death benefits. At the hearing, the parties stipulated to the relevant facts,[2] and presented two legal issues to the Board: 1) whether Watts's estate is entitled to a permanency award when there is no surviving dependent; and 2) whether Verna's estate is entitled to receive the unpaid remainder of 400 weeks of death benefits. The Board decided

---

1. 19 *Del.C.* § 2328 provides that an occupational disease shall be treated the same as an occupational injury. Thus, references to a worker's "injury" includes Watts's lung cancer.

2. Blue Hen agreed that Watts had suffered a 90% loss to his left lung, a 30% loss to his heart, and a total loss of his adrenal glands approximately three months before he died.

against the estates on both issues, and the Superior Court affirmed. This appeal followed.

## Discussion

■■■ Delaware's Workers' Compensation Act provides the exclusive remedies available to employees injured in the course of their employment.[3] Thus, workers may not sue to recover damages for injuries, or death, caused by their employers' negligence. Instead, the Act specifies various benefits for workers and their families, which are available without regard to fault, and without the costs and delay of civil litigation. Because the Act was intended to benefit injured workers, our courts construe it liberally, and "resolve any reasonable doubts in favor of the worker."[4]

Bearing in mind the Act's remedial purpose, we turn to the first issue—whether the estate of an injured worker is entitled to receive permanent injury benefits, regardless of whether or not those payments will benefit a dependent of the deceased worker. The permanency statute, 19 Del.C. § 2326, provides in relevant part:

(a) For all permanent injuries in the following classes, the compensation to be paid regardless of the earning power of the injured employee after the injury shall be as follows:

For the loss of a hand....

 * * *

(g) The Board shall award proper and equitable compensation for the loss of any member or part of the body or loss of use of any member or part of the body up to 300 weeks....

 * * *

(i) ... [T]he compensation provided for in subsections (a)-(h) of this section shall be paid in addition to the compensation provided for in §§ 2324 [compensation for total disability] and 2325 [compensation for partial disability] of this title.

The parties stipulated that Watts sustained permanent injuries, within the meaning of § 2326, to his lung, heart and adrenal glands. Thus, had Watts's petition been filed and resolved before his death, he would have been eligible to receive permanency benefits.

■■■ In deciding whether Watts's death terminated his entitlement to permanency benefits, we look to § 2332, which provides:

Should the employee die as a result of the injury, no reduction shall be made for the amount paid for medical, ... or hospital services and medicines nor for the expense of last sickness and burial as provided in this chapter. Should the employee die from some other cause than the injury as herein defined, the claim for compensation shall not abate, but the personal representative of the deceased may be substituted for the employee and prosecute the claim for the benefit of the deceased's dependent or dependents only, but in the event an agreement for compensation or an award has theretofore been made, the full unpaid amount thereof shall be payable to the deceased employee's nearest dependent as indicated by § 2330 of this title ..., provided, however, that no payment or award under § 2324 or § 2325 of this title shall continue or be ordered beyond the date of such injured employee's death.

The statute differentiates between those workers who die from their occupational injury and those who die from other

---

**3.** 19 Del. C. § 2304.

**4.** *Hirneisen v. Champlain Cable Corp.,* 892 A.2d 1056, 1059 (Del.2006)(Quotation marks and citation omitted.).

causes. For those who die from their work injury, the statute specifies that there shall be no reduction in payment of medical and burial expenses. For those who die from other causes, the statute authorizes the continued prosecution of a claim for compensation subject to two limitations: a) the claim must be pursued for the benefit of the worker's dependents, and b) the duration of any award of permanent or partial disability payments must be limited to the worker's lifetime.

■ This statute does not expressly authorize a claim for permanency benefits by a worker who dies from his injury. The Superior Court adopted the Board's conclusion that, because there is no reference to permanency benefits in § 2332, there is no statutory basis for Watt's estate to prosecute such a claim. We reject that conclusion, because it ignores both the statute's legislative history and the basic principle that workers' compensation laws are to be liberally construed in favor of the workers. As properly construed, since § 2332 does not expressly abrogate a claim for permanency benefits, Watts's statutory right to those benefits survives his death and may be pursued by his estate under 10 *Del.C.* § 3707.

The legislative history of § 2332 explains what might otherwise seem to be a grant of greater post-death benefits to those workers who die from other causes than to those who die from their industrial accident or disease. As originally enacted, the statute required that post-death payments to dependents be reduced by the amount of prior payments made to the worker, and it provided no post-death benefits for those who died of other causes:

(d) Should the employee die as a result of the injury, the period during which compensation shall be payable to his dependents ... shall be reduced by the period during which compensation was paid to him in his lifetime under this Section.... No reduction shall be made for the amount which may have been paid for medical ... services and medicines nor for the expenses of last sickness and burial.... Should the employee die from some other cause than the injury ... the liability for compensation, expenses of last sickness and burial of such employee shall cease.[5] When the statute was amended in 1941, the General Assembly eliminated the reduction for prior payments to workers who died from the industrial injury, but continued to deny benefits to workers who died of other causes:

(d) Should the employee die as a result of the injury, no reduction shall be made for the amount which may have been paid for medical ... services and medicines, nor for the expense of last sickness and burial.... Should the employee die from some other cause than the injury ..., the liability for compensation, expense of last sickness, and burial of such employee, shall cease.[6]

The 1964 amendment, which remains in effect today, finally allowed post-death benefits to workers who died from other causes.[7]

■ With the benefit of this historical perspective, it is apparent that § 2332 never fully abrogated the statutory rights of workers who died from their injuries. In its most restrictive form, the early version of this statute merely required a reduction in post-death benefits. That limitation was removed in 1941. Later, even the total ban on post-death benefits for workers who died of other causes was eliminated. Consistent with this Court's holding

5. Ch. 175, § 10 Rev.Code of 1935.

6. 43 Del. Laws Ch. 269, § 8.

7. 54 Del. Laws Ch. 280, § 3.

in *Walls v. James E. Strates Shows, Inc.,*[8] "*[w]e* decline to read into § 2332 any greater limitations than are explicitly set forth therein." Since there is no express restriction on a post-death claim for permanent injuries by the estate of a worker who dies from his injuries, we hold that the worker's statutory right of action survives.[9] This conclusion gives effect to the language of § 2332 and provides the most complete benefits to the injured worker, thereby promoting one of the purposes of the Workers' Compensation Act.

The second legal issue presented is whether the estate of a surviving spouse is entitled to receive 400 weeks of benefits if the spouse does not survive for 400 weeks. The controlling statute, § 2330, provides in relevant part:

(a) In case of death, compensation shall be computed on the following basis and distributed to the following persons:

(1) To the child or children if there is no surviving spouse entitled to compensation....

(2) To the surviving spouse, if there are no children, 66 2/3% of wages ...

\* \* \*

(b) ... [t]he minimum amount payable to a surviving spouse entitled to compensation shall not be less than 22 2/9% of the said average weekly wage per week. Subject to § 2332 of this title, this compensation shall be paid during 400 weeks and in case of children entitled to compensation ... the compensation shall continue after such period of 400 weeks until such child reaches the age of 18 years ..., and, in the case of a surviving spouse entitled to compensation under this section the compensa-tion shall continue after such period of 400 weeks until the surviving spouse dies or remarries....

\* \* \*

(g) Should any dependent of a deceased employee die, or should the surviving spouse remarry, the right of such dependent or such surviving spouse to compensation under this section shall cease. However, 2 years' indemnity benefits in 1 lump sum shall be payable to a surviving spouse upon remarriage.

 The Board decided that the unambiguous language of § 2330(b) extinguishes a surviving spouse's benefits upon death or remarriage, and the trial court agreed. We find the statute less than clear on this point, however. It states that a surviving spouse "shall be paid during 400 weeks," and that the compensation "shall continue after such period of 400 weeks until the surviving spouse dies or remarries." If the 400 weeks is not a minimum, then the statute need not make any reference to time. The statute would accomplish the same result simply by stating that the surviving spouse shall be paid until the surviving spouse dies or remarries. When construing a statute, courts assume that the legislature intended all words in the statute to have meaning.[10] Thus, to give full effect to all of the language in the statute, the requirement that a surviving spouse be paid for 400 weeks should be interpreted as a minimum amount that must be paid regardless of the spouse's subsequent death.

In reaching this conclusion, we are not ignoring subsection (g), which addresses death and remarriage. That subsection

---

**8.** 241 A.2d 55, 56 (Del.1968).

**9.** *See:* 10 *Del.C.* § 3707 ("A statutory right of action or remedy against any officer or person, in favor of any person, shall survive to, or against the executor or administrator of such officer or person, unless it be specially restricted in the statute.")

**10.** *Martin v. American Potash & Chemical Corp.,* 33 Del.Ch. 234, 92 A.2d 295, 299 (1952).

provides that, if a dependent dies, or a spouse remarries, "the right of such dependent or such surviving spouse to compensation under this section shall cease." [11] Blue Hen argues that subsection (g), being more specific, overrides any contrary interpretation of subsection (b). We agree with that basic principle of statutory construction,[12] but we do not find any inconsistency in the case of the death of a surviving spouse. Subsection (b) expressly addresses the death of a spouse, and provides that compensation "shall continue *after* such period of 400 weeks until the surviving spouse dies. . . ." [13] Subsection (g) addresses the death of any other person who could be receiving benefits under § 2330, and provides that that dependent's compensation ceases upon death. Subsection (g) is no more specific than subsection (b); the two provisions address the deaths of different beneficiaries.

Blue Hen's interpretation would have us conclude that the two subsections are inconsistent. Instead, following settled rules of statutory construction, our interpretation harmonizes those subsections to the extent possible.[14] Blue Hen's argument might be more persuasive if this case involved a spouse who remarried in less than 400 weeks, because there appears to be an express conflict between the two subsections as they relate to remarriage. That issue is not before us, however, and the fact that the two subsections may be inconsistent in one respect does not require us to find a conflict in an unrelated context, where none is apparent from the language of the statute.

**Conclusion**

Based on the foregoing, the judgment of the Superior Court is reversed and this matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.

---

11. The spouse, however, is entitled to a lump sum payment equal to 2 years of benefits at the time of remarriage.

12. *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 901 (Del.1994).

13. § 2330(g) (italics added).

14. *State v. Reynolds,* 669 A.2d 90, 94 (Del. 1995).